## PATTERSON v PENNSLVANIA RD CO

Ohio Appeals, 2nd Dist, Darke Co

No 523. Decided Jan 31, 1938

Harsh, Harsh & Hare, Greenville, Paul W. Younker, Greenville, Murphy & Staley, Greenville, for plainiff appellee.

Baird Broomhall, Troy, for defendant appellant.

468

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment in favor of the plaintiff in the sum of $3,000.00. The action was for the wrongful death of R. B. Patterson, deceased, and predicated upon the negligence of the defendant company.

Pauline Patterson, who is the administratrix of the estate of R. B. Patterson, deceased, is also his widow.

The amended petition avers that plaintiff's decedent, driving a truck in a northerly direction over State Route 121 in Darke County, Ohio, some six miles from the Village of Bradford, was struck at a crossing of defendant company's lines by a train moving westwardly.

The averments of negligence were that the defendant maintained no protection whatsoever to warn members of the traveling public, including plaintiff's said decedent, of the existence and location of said grade crossing, or to warn and protect said traveling public against the approach of trains and locomotives; that it maintained no ground flagman, no crossing gates, no flashlight or track circuit electric alarm bells, or any other method or device intended to warn users of said highway of the approach of a train or locomotive; that it approached the crossing where it came in contact with the truck upon which the plaintiff's decedent was riding at a high and dangerous rate of speed, namely 75 miles per hour; that it failed and neglected to sound signals by bell and whistle, as required by law; that it had no sign at the point of said crossing with large and distinct letters placed thereon, to give notice of the proximity of the railroad and warn persons to be on the lookout for the locomotive, as required by law.

The answer denied the averments of negligence against the defendant and asserted the contributory negligence of plaintiff in that plaintiff's decedent did not, prior to the collision, operate his truck with due care at a reasonable and lawful rate of speed, did not look and listen for an approaching train when such looking and listening would have been effective, and did not otherwise exercise due care for his own safety. Plaintiff replied, denying contributory negligence.

Upon trial had verdict was returned for the plaintiff and after a motion for new trial was overruled, judgment was entered for plaintiff on the verdict.

Several errors are assigned but a consideration of the record is convincing that there is but one question which merits any considerable attention, namely, whether or not, as a matter of law, plaintiff's decedent is chargeable with contributory negligence.

It must be conceded that the defendant is chargeable with negligence per se by reason of the violation of █ §8852 GC in failing to maintain a warning sign at the crossing where plaintiff's decedent was killed and negligence may have been proven in other particulars, namely, █ ly, excessive speed of the train under the circumstances and the failure to maintain any method or manner of warning at the crossing, and the jury could properly have found that one or more of these acts of negligence was a proximate cause of Mr. Patterson's death.

The evidence discloses that on the day that Patterson was killed he was transporting a truck load of denim from Pell City, Alabama, to Versailles, in Darke County. Although he had been in the employ of the Alabama Highway Express, Inc., the transporter of the merchandise, for two years, this was the first and only time that he had been into Ohio and along the route which he was then following.

The collision occurred about 10:30 o'clock in the morning, on the 10th of December, 1934. On the night before and during the morning of the collision it had snowed although it was not snowing when the accident occurred. There was about an inch of snow on the ground which covered the ground in the main. Most of the testimony is to the effect that the highway proper was free from snow although at least one witness says that it was pretty well covered. Likewise the weight of the evidence is to the effect that the tracks of the defendant company's railway were free from snow. Plaintiff's Exhibit A, being a view of the railroad right of way to the west of the crossing in question indicates that the snow was rather deep on the embankment and probably extended over onto the ties between the rails. It was a cold day with a raw, gusty wind blowing from the southwest, which no doubt accounted for the variation in the amount of snow on the ground. Some of the witnesses say the morning was cloudy, others that the sun was shining at the time of the collision. It is fair to assume that the degree of visibility was average. There is no showing that the truck was being driven at an unusual or excessive rate of speed so as to

indicate that the driver was asleep, or in any improper or negligent manner, as it approached the crossing. The train was moving at a high rate of speed, approximately 70 miles per hour and in probability sounded a whistle and rang a bell according to law, as it approached the crossing. Several witnesses, all connected in some manner, with the defendant company, were riding upon the train, and all testified that they had heard the whistle, but none that he had heard the bell, although one witness was in the first car of the train with the door open. Another man besides Patterson was in the truck. Patterson was a substitute driver and who was driving the truck does not appear. Both men were killed and there is no testimony respecting their actions immediately before or at the time of the collision except as may be inferred from the movement of the truck. There is testimony that the oncoming train would have been visible to a traveler for a distance of several hundred feet and that there was nothing to prevent Patterson from seeing the oncoming locomotive in time to have stopped his truck, had he looked to the east as he approached the crossing.

Two witnesses, H. E. Miller and Mr. Perry, Superintendent of Highway maintenance, testified that there are yellow circular signs marked "R.R." erected by the State Highway Department to the north and to the south of the crossing. It may be inferred that there was one of these signs to the south of the crossing, to the right of traffic moving northwardly, and one north of the crossing to the right of traffic moving southwardly. Miller says that these signs were within three feet or a little over of the crossing. This must be a mistake. The Superintendent fixes the distance from the crossing of the signs at 250 or 300 feet. The photograph, Defendant's Exhibit 3, shows 8 perpendicular board signs, striped black and white, near the crossing and on either side thereof. To the north of the crossing two of these signs are not in line, one appearing quite a distance to the northwest of the other. It is agreed that the photograph, Defendant's Exhibit No. 3 is inexact in that it discloses a cross-arm railroad "Danger" sign which was not in place at the time of the collision. It is doubtful if the board signs were intended in any manner to warn of a crossing, but in probability were placed along the highway to indicate soft shoulders.

Defendant's exhibit 3 is a view of the crossing and approach thereto, taken with the camera in the center of the highway, 100 feet south of the south rail of the westward main track, facing north.

Upon these facts the appellant insists that contributory negligence clearly appears inasmuch as Mr. Patterson could have seen the oncoming train had he looked when looking would have been effective, it must follow that he did not so look and that he is thereby chargeable with negligence contributing to cause his death. The appellee contends that this principle can not be given full application because the jury had the right to determine under the facts that Patterson did not know or appreciate he was about to pass over a railroad crossing. Obviously if the appellant is correct in its position, the trial court should have directed a verdict for the defendant and failing to do so this court should enter such judgment. If, on the other hand, the claim of the appellee is well made, the record presents facts which could properly have been resolved by the jury in favor of the plaintiff. That is to say, if this case should properly have been submitted to the jury there is enough evidence in the record to support it.

There thus is but one question left on this record, and that is: Does it appear that Patterson, under all the circumstances, was put on notice that he was about to reach the railroad crossing? If the record will permit of no conclusion but that he was so chargeable, then the plaintiff can not recover, but the obligation to look for an oncoming train at the crossing at a time when such looking will be effective has application to a known crossing only, i. e., one actually known or which by the exercise of due care should have been known to him.

The railroad company did not meet its obligation of placing the customary cross-arm warning sign in proximity to the crossing, as required by law. In C. C. & I. Ry. v Russ, 13 C.C. 405, it is said.

"The object of having a signboard at a crossing is to notify travelers of its existence."

This is the one signal which by common usage and practice has become an accepted notice of the proximity of a railroad crossing.

The employer of Mr. Patterson testified that he was a careful and experienced driver. We start with the presumption that

Patterson was exercising due care for his own safety. It is incomprehensible that he would have disregarded the first law of nature, namely, self-preservation, and driven upon this railroad crossing had he been in possession of his faculties and had known of its presence. Negligence is never presumed. The court very properly charged the jury respecting the averments of negligence, burden of proof, etc., and no objection is interposed to the charge of the court.

There are questions of fact whether or not Patterson, in the exercise of ordinary care, should have heard the whistle or the bell of the oncoming train. Patterson and the other passenger were in an enclosed truck which in probability made considerable noise as it moved along. Inasmuch as passengers in every car in the train did not hear the ringing bell of the locomotive it is not to be expected that Patterson heard the bell. Whether or not he heard the whistle is more difficult. However, it appears that the wind was moving in the opposite direction from which the train was coming, thus making it easier for those in the train to hear the whistle and more difficult for those to the west of the train to hear it. Other witnesses at varying distances heard the whistle, but they were in the open. Whether or not, in the absence of knowledge that he was about to come on to a railroad crossing, Mr. Patterson would, had he heard the whistle, have given full significance to it, or fully appreciated the place or direction from which the sound emanated is a question under all the physical factors presented.

The highway sign, indicating a railroad crossing ahead, was properly before the jury as a part of the physical set-up with which the plaintiff was confronted as he approached this crossing. The dimensions of this sign are not given and it does not appear in any of the photographs, although the same type of sign is shown in the photo, Defendant's Exhibit 3, beyond the crossing, to the north thereof. It would be some 350 or 400 feet from the place where the photograph was taken. At this distance it does not seem to be of any considerable size. However, the fact that the highway sign was in the highway should not, as a matter of law, bind Patterson to the knowledge of the exact location of a railroad crossing further ahead on the highway. An analogous situation has been before this court many times in actions for damages growing out of automobile collisions at intersections. It is common practice to place "Stop" signs upon the highway at a short distance from an intersecting road though they are not so placed by authority of law. An automobilist though he may know of the intersection, who fails to heed one of these signs is not chargeable with negligence per se, but whether or not he should have stopped is a question for the jury and the fact that a sign was preesnt may be by them considered. So in this case the jury had a right to determine that Patterson, by reason of the highway sign, should have been put on such notice that he was chargeable with the discovery of the railway crossing when he reached it. On the other hand it may have believed and had a right to say that if Patterson saw this sign it was not definite notice to indicate at what time or at what distance ahead a railroad crossing might appear.

Likewise the jury may well have said that Patterson should have known because of physical conditions generally, that he was coming up to a railroad crossing. However, the practice of automobilists and their obligation generally on the open highway unbroken by intersections or known dangerous situations is to keep their eyes directed to the road ahead. This principle has many times been invoked touching the obligation of an engineer on a railroad in the operation of his locomotive. **R R Co v Elliott 4 Oh St 474, R R Co v Kistler, 66 Oh St 337.**

The photo, Defendant's Exhibit 3, taken alone, is persuasive that Patterson should have recognized the crossing, but the outlook of the lens of the camera placed in the middle of the highway is not entirely like the view of the driver in the closed cab of a truck.

The fact that Patterson was operating a heavily loaded truck, necessitating care in its operation over a thoroughfare for the first time, with no prior knowledge of the railroad crossing which he was approaching, the ground to either side of the way largely covered with snow, a ditch of considerable depth to his right, immediately adjacent to the highway, the evidence of a newly constructed and uncompleted highway at and in the vicinity of the crossing, the gradual rise of the road, 3½ feet in a distance of 325 feet, as it approached the tracks, the absence of the common warning sign, all were facts from

which the jury, in our judgment, had the right to determine that Patterson did not know and should not in the exercise of ordinary care have known of the railroad crossing, as he came up to and onto the the railroad tracks.

There is an interesting annotation to Stangeis, Admr., etc., v. P.O. & N.R. Co. (Mich.) 93, A.L.R. 215. In that case a verdict for the defendants was supported, but the court held that there was a jury question. We do not cite the case as controlling authority, but merely to direct attention to the annotation which considers cases relating to the "Responsibility for accident at railroad crossing as affected by absence, improper location, or inefficiency of signs warning approaching travelers of presence of crossing."

May we say that we have interpreted the facts in a favorable light to the plaintiff as is our obligation on the legal questions before us. Pope, Admx v Mudge, 108 Oh St 192. We readily recognize that had the facts been resolved against the plaintiff we should not have disturbed the verdict.

This is a novel and an unusual case, but upon a fair consideration of the record in the light of the law as we understand it, we are of the opinion that there is no prejudicial error apparent on the record and the judgment should be affirmed. It will be so ordered.

BARNES, PJ, and GEIGER, concurring.